IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01165-KLM

CAROLINE VIRGINIA SMITH,

     Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,[1]

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[2] on review of the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*   The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

     The Court has reviewed Plaintiff's Opening Brief [#15] ("Opening Brief"), Defendant's Response Brief [#17] ("Response"),[3] the Social Security Administrative Record [#11], and

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the Defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#13].

[3] Plaintiff did not file a Reply Brief.

the applicable law and is sufficiently advised in the premises.  For the reasons set forth

below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

Plaintiff was born on June 22, 1976, and was 39 years old on her date last insured

("DLI") of December 31, 2015.  Transcript [#11] ("Tr.") 30, 33.  Plaintiff filed a claim for

Disability Insurance Benefits on November 6, 2015, alleging disability since August 2014

due to a variety of physical and mental medical conditions.  *Id.* 28, 164-65.

Plaintiff's application was initially denied, Tr. 103, and she requested an

administrative hearing before an Administrative Law Judge ("ALJ").  A hearing before ALJ

Jamie Mendelson was held on Plaintiff's claim on January 22, 2018.  *Id.* 48-83.

The ALJ denied Plaintiff's claim for benefits in a decision dated April 20, 2018.  Tr.

27-39.  In the sequential evaluation process required by law, the ALJ found that Plaintiff last

met the insured status requirements of the Act on December 31, 2015, and that Plaintiff

had not engaged in substantial gainful activity since the onset date of August 14, 2014

through her DLI.  Tr. 29.  At step two, the ALJ found that Plaintiff had the following severe

impairments: "degenerative disc disease of the cervical spine, fibromyalgia, history of

temporomandibular [sic] joint disorder (TMJ). . ., history of Ehlers-Danlos syndrome,[4]

history of postural orthostatic tachycardia syndrome (POTS) with dysautonomia,[5] and

---

[4] This syndrome "is a group of inherited disorders that affect" connective tissues."
Mayo Clinic, Ehlers-Danlos syndrome,https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125.  *See also Response* [#17] at 3 and n. 5.

[5] Postural orthostatic tachycardia syndrome (POTS) is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom.  OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position.  https://www.medicinenet.com/pot_syndrome/article.htm; *see also Opening Brief*

functional neurological symptom disorder." *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the requirements of a Listing. *Id.* 31.

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found through the DLI of December 31, 2015, that Plaintiff had the capacity to perform sedentary work with the following additional limitations:

> She could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds.  She could occasionally balance, stoop, kneel, crouch, and crawl.  She could frequently handle and finger and could not perform overhead reaching.  She could never be exposed to unprotected heights and heavy machinery. The claimant could perform tasks of limited complexity consistent with unskilled work without strict production rate pace or quotas.

Tr. 31. The ALJ further found that Plaintiff's "medically determined impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* 32.

At step four, the ALJ found with the assistance of a vocational expert that Plaintiff was unable to perform her past work as a consultant and research assistant.   Tr. 37.  At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the applicable period.  *Id.* 38.  These included

---

[#15] at 5 n. 4.  Dysautonomia refers to a disorder of autonomic nervous system ("ANS") function that generally involves failure of the sympathetic or parasympathetic components of the ANS, but dysautonomia involving excessive or overactive ANS actions also can occur. https://my.clevelandclinic.org/health/articles/6004-dysautonomia.  *Id.*

representative occupations such as a Food and Beverage Order Clerk, Charge Account Clerk, and Addresser.  *Id.*  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from August 1, 2014, the alleged onset date, through the DLI of December 31, 2015.  *Id.* 39.  Plaintiff's claim for benefits was therefore denied.

The Appeals Council declined Plaintiff's request for review.  Tr. 5-10.  Thus, the ALJ's decision became final for purposes of judicial review.  20 C.F.R. § 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability."  A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making

a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.  However, it "may not reweigh the evidence

nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Thus, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice. . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III.  Analysis

Plaintiff argues that the ALJ committed reversible error by giving great weight to non-examining State agency medical consultants who relied on incomplete medical evidence, and little weight to the opinions of the treating providers. *See, e.g., Opening Brief* [#15] at 2; Tr. 35. The treating physicians opined that Plaintiff had much more extensive limitations than opined by the state agency physicians. *See, e.g., Opening Brief* [#15] at 4-9. The Court first addresses the argument that the State agency medical consultants' opinions were not based on a complete record, and then addresses whether the ALJ erred in weighing the medical opinions.

### A.      Opinions Based on an Incomplete Record

Plaintiff argues that the ALJ's decision to give great weight to the State Agency medical consultants' opinions is not supported by substantial evidence because their opinions "were *based an obviously and critically incomplete medical record*." *Opening Brief* [#15] at 3 (emphasis in original). The Court notes that Dr. Maravelli's opinion authored January 18, 2018 (Tr. 1228-35) was chronologically the very last thing in the record, so this physician would have had the opportunity to review the treating physicians' opinions if they

were provided to him.  Plaintiff is correct, however, that Dr. Maravelli did not appear to have the benefit of the treating physicians' opinions in making his assessment.  *See id.* at 1234 (indicating that he did not have a medical source statement regarding the claimant's physical capacities in the file).  In fact, the only evidence that Dr. Maravelli discussed in his assessment was dated prior to Plaintiff's DLI.  *See id.* at 1233, 1235.   Similarly, Dr. Suyeishi's opinion, issued early in May 2016,  did not have the benefit of the later mental health assessments of Dr. Holden and counselor Tom Board's opinion.  *See Romo  v. Comm'r, Soc. Sec. Admin.*, 748 Fed. Appx. 182, 186 (10th Cir. 2018) (finding ALJ did not err in giving greater weight to State agency consultant's opinion that "was based on a review of Ms. Romo's complete case record").

Nonetheless, as noted by Judge Christine M. Arguello of this Court, "an ALJ does not err in according weight to the opinion of a reviewing physician who does not have access to the complete record where the ALJ explicitly considers the medical evidence to which the reviewing physician did not have access."  *Wilson v. Colvin*, No. 13-cv-00699-CMA, 2013 WL 6464229, at 3 (D. Colo. Dec. 9, 2013).  In so finding, Judge Arguello relied on the Tenth Circuit's decision in *Gonzalez v. Colvin,* 515 Fed. Appx. 716, 719 (10th Cir. 2013) ("And although it is true that [state agency physician] Dr. Twombly was privy to only an incomplete record, the ALJ specifically addressed this point in finding that the more recent record evidence failed to establish that Gonzales's conditions had worsened since Dr. Twombly's review.").  Here, as in *Wilson*, the ALJ reviewed the opinions of the treating physicians that were not considered by the State agency medical consultants, as discussed in the next section.  "Therefore, the fact that [the State agency medical consultants] did not have access to all records . . . does not constitute a basis for reversal."  *Wilson*, 2013 WL

6464229, at *3; *see also Chorovich v. Colvin*, No. 14-cv-00933-RJS-EJF, 2016 WL 8377511, at *12 (D. Utah March 4, 2016).

**B.    Weighing of the Medical Opinions**

Plaintiff next argues that the ALJ did not properly weigh the medical evidence, including the opinions of the treating providers, and that some of the reasons the ALJ stated to give little weight to them are not supported.  The Court separately addresses the medical opinions as to Plaintiff's physical impairments and mental impairments.

**1.    Opinions Regarding Physical Impairments**

**a.    Dr. Pocsine**

Treating physician Dr. Pocsine executed a treating source assessment on December 22, 2017, opining that Plaintiff would never be able to lift or carry more than ten or twenty pounds, maintain sustained flexion in the neck, or climb.  Tr. 1202-1206.[6]  Dr. Pocsine also opined that Plaintiff could only be on her feet standing or walking for up to two hours a day, could sit for less than four hours in a day (30-60 minutes at a time), and needed to alternate sitting and standing or walking.  *Id.*  In addition, Dr. Pocsine found that Plaintiff needed frequent breaks, was incapable of even low stress jobs, would frequently be off task and unable to concentrate, and would need to miss more than four days of work per month.  *Id.* 1205-06.  Diagnoses and/or medical conditions that supported these limitations included orthostatic hypotension, syncope, Ehlers-Danlos syndrome, chronic fatigue syndrome and chronic pain syndrome.  *Id.* 1206.

---

[6] As to the impairment related to Plaintiff's neck, Dr. Pocsine stated that Plaintiff would only occasionally be able to turn her head to the right or left, look up or down, or maintain a static neck position.  *Id.*

The ALJ accorded "little weight" to Dr. Pocsine's opinions, mostly because they were rendered "one year after the DLI and . . . do not reflect [the] claimant's functionality during the relevant period of adjudication." Tr. 36.  While Plaintiff argues that this conclusion "ignores the fact that Plaintiff's symptoms and conditions did not suddenly strike on the very date on which a report of them happened to be drafted[,]" *Opening Brief* [#15], the Commissioner is correct that there is no evidence that Dr. Pocsine's opinion sheds light on Plaintiff's functioning prior to Plaintiff's DLI of December 2015.  *See Response* [#17] at 13; *see also Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (medical evidence beyond the date of the DLI may be considered to the extent they shed light on the nature and severity of a claimant's condition during the relevant time period).

Dr. Pocsine began treating Plaintiff in October 2016, ten months after Plaintiff's DLI (Tr. 1204), and Dr. Pocsine did not relate her opinion back to December 2015.  Instead, Dr. Pocsine opined only that Plaintiff's limitations existed "prior to 2016 *per the patient*" (*id.* 1206) (emphasis added).  But the ALJ discounted Plaintiff's subjective complaints (Tr. 32), a finding Plaintiff has not challenged.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").   An ALJ may discount a doctor's opinion which is explicitly based on a claimant's subjective complaints that the ALJ found were unreliable, as here.  *See Rivera v. Colvin*, 629 Fed. Appx. 842, 845 (10th Cir. 2015) (affirming the ALJ's decision to discount an opinion that was based in part on a claimant's subjective complaints, which the ALJ found were not credible: "In weighing [doctors'] opinions, it was entirely appropriate for the ALJ to consider where [they] got their information.")  Accordingly, the Court finds that the ALJ gave ""specific, legitimate reasons

for disregarding" Dr. Pocsine's opinion.  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).[7]

### b.   Dr. Betkowski

Plaintiff's treating cardiologist Dr. Betkowski opined as to Plaintiff's condition by letter dated June 29, 2016.  Tr. 690-91.  He stated that Plaintiff's "symptoms made it difficult for her to function and continue employment."   *Id.* 690.   Those symptoms "included the sensation of palpitations, heart racing and shakiness and also the sensation of altered blood flow to her extremities with increased coolness in her upper and lower extremities. *Id.*   Dr. Betkowski also stated that Plaintiff's "combination of chronic pain syndrome and dysautonomia seem to be quite disabling for this patient."  *Id.* 691.

The ALJ gave "little weight" to Dr. Betkowski's opinion because "no functional limitations were provided[,]" and "the assessment is based upon the claimant's own subjectively reported symptomology, as opposed to the doctor's own findings."  Tr. 35-36. The ALJ also found that Dr. Betkowski's opinion was inconsistent with "the objective cardiology diagnostic procedures during the relevant period of adjudication, including normal EKGs, unremarkable ECG findings and a Holter study showing normal sinus rhythm and no abnormal heart rhythms. . . ."  *Id.*  Plaintiff argues as to the latter finding that the

---

[7]  The Court recognizes that the ALJ did not discuss the treating physician rule and the "controlling weight" standard relevant to Dr. Pocsine or the other treating physicians' opinions.   Nonetheless, it is clear from the ALJ's decision that controlling weight was not given to their opinions because of contradictory medical evidence within the relevant period, the opinions did not relate back to the relevant time period, and the other reasons stated by the ALJ, as discussed in this Order.  The Court has found the reasons stated by the ALJ to give little weight to the opinions of Dr. Pocsine were valid, and finds this below as to the other treating physicians. Further, even if there was error in connection with the ALJ's failure to be more explicit about the treating physician rule, this is at most harmless error as it did not affect Plaintiff's substantial rights or "constitute a miscarriage of justice."  *See Zumwalt v. Astrue*, 220 Fed. Appx. 770, 780 (10th Cir. 2007) (quotation omitted).

ALJ's conclusions ignore the objective findings from the upright table tilt test, and they appear suspiciously like an effort by the ALJ to substitute her own medical conclusions for those of the treating physician." *Opening Brief* [#15] at 9.

The Court finds, contrary to Plaintiff's argument, that the ALJ gave valid reasons for giving "little weight" to the opinion of Dr. Betkwoski. Plaintiff does not and cannot dispute that Dr. Betkowski did not state functional limitations in his opinion. *See Mann v. Astrue*, 284 Fed. Appx. 567, 670-71 (10th Cir. 2008) (finding that the ALJ did not improperly reject treating physicians' opinions when treating physicians did not offer any opinion about functional limitations); *Hart v. Berryhill*, 17-cv-00590-PAB, 2019 WL 1434619, at *6 (D. Colo. March 31, 2019) ("because [treating physicians'] letters did not specify any functional limitations, there were no RFC-specific opinions for the ALJ to disregard"). Moreover, Plaintiff does not dispute that the ALJ's finding that Dr. Betkowski's opinion was inconsistent with the specified objective cardiology diagnostic procedures was supported by the record. This was also a proper basis to give little weight to Dr. Betkowski's opinion. *Romo*, 748 Fed. Appx. at 186 (rejecting the argument that the ALJ substituted his own medical judgment for the doctor's when he discounted the opinion based on the doctor's examination findings).[8] Finally, Dr. Betkowski's opinion as to disability was an opinion reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance). Based on the foregoing, Plaintiff's argument that the opinion of a treating

---

[8] While Dr Betkowski stated that the tilting test relied on by Plaintiff did show "excessive DBP increase and HR increase[,]" he found that it did not meet the criteria for POTS. Tr. 571. This finding thus does not ultimately support Plaintiff's argument or show that the ALJ erred in relying on the objective findings from the cardiology diagnostic procedures.

cardiologist should have been given greater weight (Opening Brief [#15] at 8-9) must be rejected.

### c.   Dr. Maravelli

Finally as to Plaintiff's physical impairments, Dr. Maravelli opined on January 16, 2018, that "[o]verall, objective evidence does note [sic] correlate with the reported severity of symptoms[,]", stating:

> MER shows no frequent syncope related to POTS and only sparse follow up. She follows up for neck pain with various treatments rendered. Radiology does not reveal a source for radiculopathy. The claimant's statements are found to be partially consistent.

Tr. 1235.   Dr. Maravelli stated that Plaintiff essentially had a light RFC with postural limitations and a hazard restriction.  *Id.* 1229-1230.  In support of the RFC, Dr. Maravelli found that Plaintiff had mild cervical DDD, TMJ, normal gait, normal strength, normal sensation and POTS.  *Id.* 1230.

The ALJ gave "great weight" to the opinion of Dr Maravelli (Tr. 35), which Plaintiff argues was error.  The Court recognizes that the opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Nonetheless, "'[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."  *Romo*, 748 Fed Appx. at 186 (citing SSR 96-6p, 1996 WL 374180, at *3); *see also Gonzales v. Colvin*, 515 Fed. Appx. 716, 719 (10th Cir. 2013) ("[T]he ALJ found that the same record evidence undermining [the treating

physician's] opinion supported [the non-examining physician's] and thus gave greater weight to the latter's opinion.").

In giving "great weight" to the opinions of the State Agency medical consultants, including Dr. Maravelli, the ALJ noted that they "are trained health professionals and are familiar with the social security administrative disability process." Tr. 35.  The ALJ further stated that their opinions are "supported by the clinical medical findings and are consistent with the substantial evidence of record."  *Id.*  As to the findings assessed by Dr. Maravelli, the ALJ stated that the "assessments accommodate the claimant's physical impairments while also considering the findings of 5/5 strength, normal gait, negative Romberg, and intact cranial nerves (Exhibits 11F, 14F).  Plaintiff has not disputed these findings, and they are supported by the record cited by the ALJ.  Accordingly, the ALJ's decision to give great weight to the findings of Dr. Maravelli is supported by substantial evidence.

This is particularly true as the ALJ actually "included additional restrictions [than those imposed by Dr. Maravelli], finding Plaintiff capable of a reduced range of sedentary work, the least strenuous kind of work.  The ALJ gave Plaintiff the benefit of a doubt, arriving at an RFC  that was in between Dr. Pocsine's and Dr. Maravelli's opinion, finding Plaintiff more capable than Dr. Pocsine, but less capable than Dr. Maravelli.  *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) ("Faced with the conflicting opinions, the administrative law judge adopted a middle ground. . . . In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one.  We upheld this approach in *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir.2012).").  The Court finds no error in this finding, as it the ALJ's duty as finder of fact to resolve conflicts in the record.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).

Finally, to the extent Plaintiff argues that the ALJ erred in giving Dr. Maravelli's opinion great weight because his "specialty is unclear[,]" *Opening Brief* [#15] at 8, 10, this argument is rejected.  According to the record, Dr. Maravelli's specialty code is 19 (Tr. 1235), which corresponds to Internal Medicine.  *Response* [#17] at 14 (citing POMS DI 24501.004, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424501004).  Thus, Plaintiff's argument that Dr. Maravelli's opinion should be entitled to less weight if he is an emergency medical practitioner (Opening Brief at 8) is not supported.  Moreover, a doctor's specialty is only one factor that an ALJ considers, 20 C.F.R. § 404.1527(c)(5), and here the ALJ gave Dr. Maravelli's opinion great weight because it was consistent with the record that she considered, 20 C.F.R. § 404.1527(c)(4), a finding Plaintiff has failed to challenge.

Based on the foregoing, the Court finds no error in the weighing of the medical opinions regarding Plaintiff's physical impairments.

### 2.    Opinions Regarding Mental Impairments

#### a.    Tom Board

Tom Board, MA, LPC, participated in Plaintiff's medical care as a treating counselor, and he wrote a letter regarding Plaintiff's condition on January 8, 2018.  Tr. 1208. Mr. Board indicated he had been meeting with Plaintiff weekly beginning in January of 2015, and that he saw "a progressive deterioration in her abilities to think, remember and process conversations."  *Id.*  Mr. Board also opined that "he had not seen improvement in [Plaintiff's] abilities only regression."  *Id.*

The ALJ gave little weight to that opinion, stating among other things that Mr. Board's opinion was drafted "outside the period of adjudication" (more than a year after

the expiration of Plaintiff's DLI), and the "alleged period of deterioration was speculated to have occurred after" the DLI.  Tr. 36.  The Court finds no error with these findings.  While Mr. Board's opinion states that the "deterioration in [Plaintiff's] abilities to think, remember, and process conversations" occurred over the last two years (i.e, arguably beginning in January 2016 given the January 2018 date of the Mr. Board's opinion), he does not actually state the time frame when he saw a more significant deterioration.  More importantly, Mr. Board does not assess the severity of the limitations he identified (other than the fact that they had deteriorated/regressed), and how they impact Plaintiff's ability to work.  Thus, the ALJ was correct that Mr. Board did not actually assess functional limitations.  *Id.*  This is another valid basis for the ALJ to give little weight to Mr. Board's opinion.  *See Mann v. Astrue*, 284 Fed. Appx. at 670-71.

Moreover, Plaintiff does not dispute the ALJ's finding that "Mr. Board's assessment is inconsistent with the intact mental status examinations during the relevant period of adjudication and lack of cognitive deficits during neuropsychological testing (Exhibits 11F; 14F; 38F/13)."  Tr. 36.  As to that issue, in November 2016, almost a year after Plaintiff's DLI, she was administered a neuropsychological evaluation.  *Id.* 1038 (Exhibit 38F as cited by the ALJ).  That evaluation showed that Plaintiff had average intellectual abilities and intact abilities across most domains "including attention, visuospatial and verbal abilities, fluency, verbal list learning, visual memory, and learning and memory for contextualized information."  *Id.* 1041, 1043.  Plaintiff was found to have "largely intact neurocognitive abilities with only a few mild and variably deficient scores but without consistent impairments."  *Id.* 1043.  Additionally, as the ALJ observed, a mental status evaluation in December 2015, the month of Plaintiff's DLI, showed appropriate mood and affect, intact

memory, attention span, concentration, and fund of knowledge, and good insight and judgment. *Id.* 557 (Exhibit 14F as cited by the ALJ). Based on the foregoing, the Court finds no error as to the weighing of Mr. Board's opinion.

###### b.    Dr. Holden

Treating neurologist Dr. Holden began seeing Plaintiff on September 8, 2016. Tr. 1198. She issued assessments on September 8, 2016 (Tr. 692), December 19, 2017 (*id.* 1197-1201) and on June 4, 2018 (*id.* 11). In the December 2017 assessment, Dr. Holden opined that Plaintiff could never understand, remember, or carry out detailed instructions, and was only able to understand or carry out simple instructions occasionally. *Id.* 1198. Additionally, Dr. Holden opined that Plaintiff: (1) would never be able to maintain concentration for extended periods of time; (2) was only occasionally able to remember locations and work-like procedures; (3) was incapable of even "low stress" jobs; and (4) would constantly be off task and would need reminders and cues to stay on task. *Id.* at 1198-99. Plaintiff would, according to Dr. Holden, be only occasionally able to respond appropriately to supervision and coworkers or the public, to accept instructions and respond appropriately to criticism, and to get along with coworkers without distracting others. *Id.* 1199. Moreover, Dr. Holden stated that in an eight-hour day, Plaintiff would need more than four unscheduled breaks, and would miss work more than four days a month. *Id.* at 1199. The findings that supported Dr. Holden's assessment were "orthostatic hypotension, with significant blood pressure and heart rate variability" and "[m]emory impairments, related to autonomic changes, pain, poor sleep and medication side effects." *Id.* The diagnoses/medical conditions that supported the restrictions were Dysautonomia, POTS, cognitive impairment, and complex regional pain syndrome. *Id.* at 1198.

The Court recognizes that Dr. Holden's opinions are perhaps the most significant of the treating physicians' opinions supporting Plaintiff's appeal, as Dr. Holden opined both to serious impairments that essentially prevented Plaintiff from being able to work, and that Plaintiff's condition had been present during the relevant period that Plaintiff was insured. Thus, Dr. Holden was asked in connection with her December 2017 assessment to opine "within a reasonable degree of medical probability, and based on your knowledge of Ms. Smith's case as a whole, what functional impairments would have been in place at the time that Ms. Smith ceased work in 2014." Tr. 1198. Dr. Holden stated that the date the limitations were first present were in 2008, and that this opinion was based on the exam and treatment of the patient, the review of treatment records from other providers, knowledge of the case history over time, and the review of objective testing. *Id.* at 1201.

Dr. Holden addressed the date Plaintiff's condition began in more detail in her other assessments. She stated in a September 2016 assessment that "[a]fter thorough history and examination, as well as preview of previous medical records, it seems this condition [functional neurologic disease with cognitive, motor, pain and autonomic symptoms] has been present for at least the past eight years[,]" with "significant worsening in her condition over the past one year." *Id.* 692. In her June 2018 opinion, Dr. Holden stated that "given her condition [in September 2016] it was likely that her neurological symptoms and their associated functional impairments had been present for some time. I had no reason to believe that these symptoms had not been present for the prior eight years, as she reported to me in our discussion at that visit [. . . nor that] her significant functional impairments had [not] been present for at least two years prior to our first visit in September 2016." *Id.* 11.

-17-

Plaintiff argues that the ALJ's decision to give "little weight" to Dr. Holden's opinions because "they were drafted after the date last insured and therefore do not reflect the claimant's functionality during the relevant period of adjudication" (Tr. 36) does not properly take into account the above opinions. *See Opening Brief* [#15] at 6. Further, Plaintiff correctly notes that the ALJ did not reference the June 2018 assessment of Dr. Holden in her opinion. *Opening Brief* [#15] at 6. Nonetheless, the Court finds no error as explained below.

A treating physician may provide a retrospective diagnosis of a claimant's condition. *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). However, "[a] retrospective diagnosis without evidence of actual disability [during the relevant period] is insufficient" especially "where the disease is progressive." *Id.* As noted earlier in connection with Mr. Board's opinions, the evidence during the period of DLI that the ALJ relied on did not show disability in connection with Plaintiff's mental impairments. Thus, "'while the onset of [Plaintiff's] impairments may be traceable to events which occurred during a period of coverage, there is no evidence to suggest that [Plaintiff] experienced disabling effects of these impairments during the relevant period.'" *Flint v. Sullivan,* 951 F.2d 264, 267-68 (10th Cir.1991) (quotations omitted).

Additionally, the ALJ found that Dr. Holden's "assessments are inconsistent with the neuropsychological testing results, indicating a lack of concern for a progressive or permanent cognitive disorder (Exhibits 38F/13)[,]", and "with the neurological findings during the relevant period of adjudication, including intact cranial nerves, negative Romberg, 5/5 motor strength, and normal gait (Exhibits 11F, 14F). Tr. 35. Plaintiff does not dispute these findings, and the record supports them. Based on the foregoing, the

Court finds that the ALJ's decision to give little weight to Dr. Holden's opinions is supported by substantial evidence.

### c.      Dr. Suyeishi

State agency medical psychologist Dr. Suyeishi reviewed the record  and opined in May 2016 that Plaintiff's mental impairments did not impose any work related limitations. Tr. 91.  In support, he referenced a mental status examination from December 2015.  *Id.*

The ALJ gave Dr. Suyeishi's opinion great weight.  Again, the ALJ stated that the ALJ stated that the State agency medical consultants' opinions are "supported by the clinical medical findings and are consistent with the substantial evidence of record." Tr. 35. As to Plaintiff's mental impairments, the ALJ noted that "the opinions acknowledge the essentially intact mental status examinations of record in addition to the intact cognitive abilities from subsequent neuropsychological testing, which indicated lack of concern for a progressive or permanent cognitive disorder (Exhibits 11F; 14F; 38F/13).  *Id.*  This finding is supported by the medical evidence prior to Plaintiff's DLI, as discussed previously. Again, Plaintiff does not dispute this.

Additionally, the ALJ appeared to give Plaintiff the benefit of the doubt and assessed more restrictive restrictions than opined to by Dr. Suyeishi; specifically, she found that Plaintiff could only "perform tasks of limited complexity consistent with unskilled work without strict production rate pace or quotas."  Tr. 31.  Again, the ALJ appeared to adopt more of a "middle ground" as to Plaintiff's mental impairments.  The Court finds from the foregoing that the ALJ's decision regarding to give Dr. Suyeishi great weight as compared to the treating providers is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan*, 399 F.3d at 1262.

Accordingly, the Court finds no error in the weighing of the medical opinions regarding Plaintiff's mental impairments.

### IV.  Conclusion

For the reasons set forth above, it is

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated:  November 12, 2020

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-20-